**In re STANDARD METALS CORPORA-TION, a Delaware Corporation, Employer Identification No. 87–0221756, Debtor(s).**

Bankruptcy No. 84 B 00945 C.

United States Bankruptcy Court, D. Colorado.

Sept. 13, 1988.

See also, 10th Cir., 839 F.2d 1383.

Phillip D. Barber, Randall J. Feuerstein, Welborn Dufford Brown & Tooley, P.C., Denver, Colo., for Sunnyside Gold Corp.

Jack L. Smith, Britton White, Jr., Holland & Hart, Denver, Colo., for Standard Metals Corp.

AMENDED ORDER ON MOTION OF SUNNYSIDE GOLD CORPORATION TO DISMISS DEBTOR'S APPLICATION FOR JUDICIAL ENFORCEMENT OF ITS PLAN OF REORGANIZATION

PATRICIA ANN CLARK, Bankruptcy Judge.

This matter comes before the Court on the motion of Sunnyside Gold Corporation (Sunnyside) to dismiss the debtor's application for judicial enforcement of its plan of reorganization. The debtor requested that Sunnyside be required to provide it with certain accounting information pursuant to a postpetition agreement between the debtor and Sunnyside's assignor. Sunnyside contends that the interpretation of such agreement as it applies to the provision of accounting information is neither a core matter nor a related proceeding pursuant to 28 U.S.C. § 157. The debtor and the creditors' committee disagree, contending that the agreement is an integral part of the debtor's confirmed plan of reorganization and pursuant to the continuing jurisdiction of this Court over that plan of reorganization, the dispute regarding the provision of accounting information is a core matter.

For the reasons stated below, the Court finds that the debtor's application for judicial enforcement is a core matter and, accordingly, Sunnyside's motion to dismiss will be denied.

The facts of this case are undisputed. On March 5, 1984, the debtor filed a voluntary petition seeking protection under Chapter 11 of the Bankruptcy Code. On

November 19, 1985, pursuant to Bankruptcy Court approval, the debtor and Echo Bay, Inc., executed an asset sale and purchase agreement (Agreement) which transferred a substantial asset of the debtor, the Sunnyside Mine in Silverton, Colorado, to Echo Bay, Inc. Echo Bay subsequently transferred the Sunnyside Mine to Sunnyside, a wholly owned subsidiary of Echo Bay, Inc. The Agreement provides that the debtor shall retain a 30 percent net profits royalty interest in the mine. The Agreement defines net profits and contains certain financial reporting requirements that must be met by Sunnyside. On June 12, 1986, this Court confirmed the debtor's plan of reorganization. The plan calls for distribution of cash on hand to the unsecured creditors and for payment of 20 percent of the unsecured claims out of the payments received by the debtor pursuant to their 30 percent royalty interest. Article VIII of the plan provides that the Bankruptcy Court will retain jurisdiction for the following purposes:

c. Resolution of controversies and disputes regarding the interpretation of the Plan.

d. Implementation of the provisions of this Plan....

f. Adjudication of any causes of action, including the voiding powers actions brought by the Debtor.

The Court beings its analysis by examining the jurisdictional framework of a core proceeding in 28 U.S.C. § 157. The Bankruptcy Amendments and Federal Judgeship Act of 1984 requires the bankruptcy court to determine whether a proceeding is a core proceeding or a related proceeding. 28 U.S.C. § 157(b)(3). If a matter is determined to be a core proceeding, the bankruptcy court may hear it and render a final determination subject to appeal. 28 U.S.C. § 157(b)(1). If the matter is not a core proceeding, but rather a related proceeding, the bankruptcy court may nonetheless hear the related proceeding and submit proposed findings of facts and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). The amendments provide a list of those matters which can be characterized as core proceedings. The list, which is not meant to be exclusive, includes the following matters as delineated in Section 157(b)(2):

a. Matters concerning the administration of the estate; ...

o. Other proceedings affecting liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury, tort, or wrongful death claims.

The term "core proceeding" is not explicitly defined anywhere in the amendments. Therefore, the outer limits of what constitutes a core proceeding are to be defined by the bankruptcy court.

An added element of the analysis is that any interpretation of the amendments relating to the jurisdiction of this Court must be done within the guidelines set forth by the Supreme Court in *Northern Pipeline Construction Company v. Marathon Pipe Line Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (hereinafter called *Marathon*). In *Marathon* a plurality of the Supreme Court held that Congress's broad grant of the jurisdiction of the bankruptcy courts was unconstitutional because Article I courts were allowed to hear controversies which were required to be heard by Article III courts. The issue of bankruptcy court jurisdiction in *Marathon* involved classic state causes of action, breach of contract and warranty, misrepresentation, coercion, and duress. The defendant was, but for the complaint alleging the state causes of action, a stranger to the bankruptcy case. The plurality in *Marathon* provided a clear mandate that the jurisdiction of the bankruptcy courts to determine state law causes of action should be guarded with a great deal of circumspection.

Indeed, the case before us, which centers upon appellant Northern's claim for damages for breach of contract and misrepresentation, involves a right created by state law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the bankruptcy court. Accordingly, Congresses' authority to control the manner

in which that right is adjudicated, through assignment of historically judicial functions to a non-Art. III 'adjunct,' plainly must be deemed at a minimum. *Marathon,* 458 U.S. at 84, 102 S.Ct. at 2878.

Justices Rehnquist and O'Connor concurred with the result in *Marathon* to form a majority of six. They noted separately,

> There is apparently no federal rule of° decision provided for any of the issues in the lawsuit; the claims of Northern arises entirely under state law ... the lawsuit is before the bankruptcy court only because the plaintiff has previously filed a petition for reorganization in that court.

*Marathon,* 458 U.S. at 90, 102 S.Ct. at 2881.

This court has followed a "restrictive" analysis of the term "core proceeding." The list of the 15 types of core proceedings in 28 U.S.C. § 157(b)(2) is construed narrowly in this circuit in order to fit within the constitutional purview of *Marathon. See In re Pierce,* 44 B.R. 601 (D.Colo.1984); *In re Illinois–California Express, Inc.,* 50 B.R. 232 (Bankr.D.Colo.1985); *In re P & P Oilfield Equipment,* 71 B.R. 621 (Bankr.D. Colo.1987).

In spite of this restrictive analysis of core proceedings, the debtor's application for a judicial enforcement fits clearly within the constraints of *Marathon* and the parameters of core jurisdiction. The turnover of accounting information by Sunnyside to enable the debtor to remit the 30 percent net profits interest to unsecured creditors is fundamental to the debtor's plan of reorganization and its successful implementation. Even though the dispute over the accounting information entails an interpretation of a contract, which traditionally is a state law non-core matter, because the dispute surrounding this Agreement affects the debtor's ability to implement the provisions of its plan of reorganization and because the obligations of Sunnyside under the Agreement are postpetition, this Court is convinced that this matter involves one of the few limited circumstances wherein a contract action can nonetheless be a core matter.

It should be noted that the Agreement, which is the focus of this dispute, was entered into postpetition after notice and opportunity for a hearing. The Agreement involved the sale of a major asset of the debtor and provided that the 30 percent net profits interest would be utilized as part of the plan of reorganization. The revenues generated under the net profits interest is a crucial component of the creditors' compensation package in the confirmed plan of reorganization. The cash flow analysis (as part of the disclosure statement) reflects that the net profit interest is the only source of revenue to pay off the installment notes which the debtor issued to its creditors pursuant to its plan. The net profits interest was integral to the plan at its inception and continues to remain an integral part of the plan's implementation.

The leading cases in this district that have addressed the nature of core jurisdiction involving contract claims are all distinguishable. Unlike the matter before this Court, the actions that were deemed not to be core proceedings in *In re Counts,* 54 B.R. 730 (Bankr.D.Colo.1985); *In re Illinois–California Express, Inc.,* 50 B.R. 232 (Bankr.D.Colo.1985), and *In re Zweygardt v. Colorado National Bank of Denver,* 52 B.R. 229 (Bankr.D.Colo.1985) involved *prepetition* agreements that were clearly based upon state causes of action. All of those cases involved issues that could have been commenced totally independent of any bankruptcy case. As delineated in *Marathon* they involved rights created by state law, rights independent of and antecedent to the reorganization petition that conferred jurisdiction upon the bankruptcy court.

The interpretation of the Agreement in the case at bar however does not involve rights that are independent of and antecedent to the reorganization petition of this debtor. The Agreement was executed as part of the debtor's bankruptcy and formed a focal point for generating a confirmed plan of reorganization.

The plan grants the bankruptcy court jurisdiction to resolve any controversies regarding interpretation of the plan and to implement orders in the aid of confirmation of the plan. Pursuant to 11 U.S.C. § 1142 this Court can order any necessary party to execute or deliver any instrument required to effect a transfer of property dealt with by a confirmed plan, and the Court can issue orders to effect the implementation of the plan post-confirmation. Although the grant of bankruptcy court jurisdiction under the terms of the debtor's plan as listed earlier is extremely broad, the nature of the dispute, together with the inextricable nexus concerning the Agreement and the debtor's plan of reorganization implementation, can only lead this Court to conclude that this matter, in spite of the troublesome broad grant of continuing jurisdiction under the plan, falls within the core matter jurisdiction of this Court under the framework of *Marathon.*

Sunnyside contends that the debtor is attempting to assert a common law state contract claim under the guise of enforcing its reorganization plan. However, the history of bankruptcy court jurisdiction teaches that a postpetition contract, particularly of the nature and import of the Agreement here as it relates to the plan of reorganization, cannot be called a traditional state contract action. This Court adopts the holding and rationale in *In re Arnold Print Works, Inc.,* 815 F.2d 165 (1st Cir. 1987), wherein the First Circuit Court of Appeals held that a state law claim arising from a contract entered into post-petition is a core proceeding that the bankruptcy court has a constitutional power to decide. As in the case at bar, the court also held that the time when the contract was entered into and the relation of that contract to the judicial administration of the bankruptcy estate forms the crux of the critical constitutional difference between *Marathon* and its progeny. More importantly, the court focused on the apparent risk of procedural unfairness to require a party involved in a state law cause of action to appear in a bankruptcy court. The Court noted that from a policy standpoint any party who contracts or assumes a postpeti-

tion contract with a bankrupt company must know that they are dealing with an entity that is responsible to the bankruptcy court and accordingly the resolution of subsequent disputes in a bankruptcy court should not come as any surprise to that contracting entity. Here the wholly owned subsidiary of the entity that executed the Agreement cannot be heard to claim manifest unfairness at being hauled into the bankruptcy court when that Agreement was originally approved and reviewed by the bankruptcy court.

As a practical matter for this Court to deny jurisdiction over an interpretation of this integral agreement would be an abdication of its responsibility to see that its orders in bankruptcy are complied with and that a plan of reorganization can be consummated in an effective manner without a waste of judicial resources. Therefore, it is

ORDERED that the motion of Sunnyside Gold Corporation to dismiss the debtor's application for judicial enforcement is denied.