**In re Alan J. ANTWEIL and Mary Frances Antweil, Hobbs Pipe and Supply, a general partnership, Morris R. Antweil, Debtors.**

**Elliott JOHNSON, trustee, Plaintiff,**

**v.**

**William BARNHILL, Defendant.**

**Bankruptcy No. 11–86–00254 MA.**

**Adv. No. 88–0136 M.**

United States Bankruptcy Court, D. New Mexico.

June 4, 1993.

---

Nancy S. Cusack, William P. Johnson, Andrew J. Cloutier, Roswell, NM, for plaintiff.

William J. Arland, III, James L. Arslanian, Albuquerque, NM, for Barnhill.

### MEMORANDUM OPINION

MARK B. McFEELEY, Chief Judge.

This matter came before the Court on cross motions for summary judgment on the Trustee's complaint seeking recovery of a preferential transfer. Having considered the complaint, the briefs, the arguments of counsel, and otherwise being fully informed and advised, the Court finds the Trustee's motion for summary judgment is well taken, and will be granted, and the Defendant's motion is not well taken and will be denied.

### FACTS

The following facts are undisputed.

1. Defendant William Barnhill ("Barnhill") is an individual who owned certain interests in various wells operated by Debtor Alan J. Antweil, either individually or d/b/a Antweil Oil Company ("Debtor").

2. One incident of Barnhill's ownership interest in the wells was that Barnhill was the owner of a percentage of the oil, gas, and/or associated hydrocarbons, produced from the wells.

3. Barnhill executed various division orders that authorized the Debtor to sell Barnhill's percentage share of oil and/or gas production from the wells and required the Debtor to pay Barnhill his share of production proceeds ("runs") received by the Debtor.

4. The Debtor was paid for production from the wells on a monthly basis, typically in the last week of the month after the month in which the production occurred.

5. In the fall of 1984, shortly after the Debtor paid Barnhill his share of July 1984, runs, the Debtor suspended payment of Barnhill's runs.

6. Barnhill met with representatives of the Debtor in February 1985, and was able to obtain his suspended runs for August and September 1984, production.

7. On May 14, 1985, Barnhill filed suit against the Debtor in the Fifth Judicial District Court of Chaves County, New Mexico. In his Complaint, Barnhill sought an accounting for his runs from October 1984, through the date of judgment, payment of his runs under an open account theory, interest on the suspended runs, attorneys' fees, and punitive damages.

8. On September 16, 1985, Barnhill obtained an order from the District Court compelling production by the Debtor of various documents and the sought after accounting. Production of the documents and the accounting was to be made by the Debtor no later than September 30, 1985.

9. The Debtor failed to produce the accounting and some of the documents required in the District Court's September 16, 1985 order by September 30, 1985.

10. On October 18, 1985, the District Court issued an Order To Show Cause in which the Debtor was ordered to appear before the Court on November 15, 1985, and show cause as to why he should not be held in contempt and have sanctions levied against him for failure to produce the accounting and documents.

11. On or about November 14, 1985, the Debtor and Barnhill agreed to a settlement that provided that the Debtor would pay Barnhill $140,563.55 net runs through August 1985; all runs for September 1985; $9,912.07 interest on the $140,563.55 through November 15, 1985; and, attorney fees and costs totaling $20,656.43[1] by November 18, 1985. In return Barnhill agreed that the November 15, 1985, show cause hearing would be rescheduled for November 20, 1985, and would be canceled if payment was made by November 18, 1985.

12. On November 18, 1985, the Debtor delivered to Barnhill's attorneys an unnumbered Antweil Oil Company check (the "Check") dated November 19, 1985, in the amount of $157,148.22 made payable to Barnhill.

13. The Check was drawn on the Debtor's account at First National Bank in Albuquerque identified by account number 191510951.

14. The Check was honored by the drawee bank on November 20, 1985.

15. According to the detail on the Check, the Check was for a principal amount of $140,563.52, a September net of $6,672.63, and an interest amount of $9,912.07.

16. A typical monthly run check from the Debtor contained the following information on the check detail: production month and year, an identifying lease number, a designation whether the interest was oil or gas, an identifying lease number, the owner's interest in the property, the total volume of production (either barrels of oil or mcf of gas), lease production taxes, lease gross less the production tax, the owner's share of any applicable windfall profits tax, and the net value of the owner's interest in that particular production.

17. The check detail for the Check did not contain the type of information specified in Number 16, above.

18. The Debtor filed his petition for relief under Chapter 11 of the Bankruptcy Code on February 18, 1986.

19. On May 12, 1988, the Trustee filed this action against Barnhill seeking to avoid the payment of the $157,148.22 as a preference under 11 U.S.C. § 547.

20. When the Debtor filed bankruptcy in February, 1986, neither he, Hobbs Pipe and Supply, or Morris R. Antweil, maintained any separate suspense accounts in which suspended runs were held.

21. Prior to the filing of the Debtor's bankruptcy petition, the debtor's account at First National Bank in Albuquerque was used to pay various obligations.

22. The Debtor's account at First National Bank in Albuquerque was overdrawn on October 2 and 3, 1985.

23. Prior to filing bankruptcy, the Debtor typically deposited run checks he received from production purchasers into an account identified by the name "Morris R. Antweil Oil and Gas," (Disbursement Account") number 103809501 at Moncor Bank in Hobbs.

24. The Disbursement Account was overdrawn by over $200,000 on October 17, 1985.

25. The Debtor was insolvent on November 20, 1985.

## DISCUSSION

The Trustee asserts that the payment of $157,148.22 made to the Defendant on November 18, 1985, was a preferential transfer under section 547 of the Bankruptcy Code, and seeks recovery of that payment plus prejudgment interest. The Defendant asserts that the payment was a payment of

1. The attorneys' fees were paid by separate check not at issue in these proceedings.

funds held in trust for his benefit by the Debtor, and that the funds used for the payment were thus not property of the estate.

Section 547 of the Bankruptcy Code authorizes a Trustee or Debtor in possession to recover for the benefit of the bankruptcy estate and its creditors certain transfers made within 90 days of the bankruptcy filing. To recover such a transfer, the Trustee must prove the following:

a. That a transfer was made

b. Of an interest of the debtor in property

c. To or for the benefit of a creditor

d. On account of an antecedent debt

e. made while the debtor was insolvent

f. Within 90 days of the filing of the petition, and

g. That such transfer enables the creditor to receive more than he would otherwise have received in a Chapter 7 liquidation.

11 U.S.C. § 547(b).

■ The Trustee has the burden of proof with respect to each element. It is undisputed that the transfer was made for the benefit of a creditor on account of an antecedent debt while the Debtor was insolvent. It has also been determined that the transfer took place within 90 days of the debtor's bankruptcy filing. (*See Barnhill v. Johnson*, —— U.S. ——, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), where it was determined that the transfer took place on the date the check was honored). Thus, the only remaining issue is whether the payment was made from an interest of the debtor in property.

Defendant, Barnhill asserts that the $157,148.22 was not property of the estate, thus rendering section 547 inapplicable. He argues that the payment represented a payment of funds held in trust by the Debtor for his benefit. To determine whether the payment was a transfer of funds held in trust, a two part analysis is required. First, a trust relationship must have existed between Barnhill and the Debtor. Second, the funds paid to Barnhill must be funds that were held in trust by the Debtor for Barnhill's benefit.

■ Courts in this jurisdiction have held that an operating agreement creates "a trustee type relationship imposing a duty of fair dealing between the operator and the non-operator owners." *Reserve Oil v. Dixon*, 711 F.2d 951 (10th Cir.1983); *See also, In re Mahan and Rowsey, Inc.* 817 F.2d 682 (10th Cir.1987). Thus, this Court finds that a trustee type relationship existed between Barnhill and the Debtor.

■ The remaining issue is whether the funds transferred to Barnhill by the Debtor were trust funds. If so, the Debtor had no interest in the funds and section 547 is not applicable. If not, the funds were property of the estate and the payment to Barnhill was a preferential transfer under section 547. Express trusts are those that are created by the direct and positive acts of the parties, by some writing or deed, or by words that either expressly or impliedly evidence a desire to create a trust. *E.g., Ward v. Buchanan*, 22 N.M. 267, 160 P. 356 (1916); *In re Palmer*, 140 B.R. 765 (Bankr.C.D.Cal.1992). A trust arising from the agreement of the parties, whether written or oral is an express trust, and must be manifested, although it need not be created by some writing. *Eagle Min. Imp. Co. v. Hamilton*, 14 N.M. 271, 91 P. 718 (1907), *aff'd*, 218 U.S. 513, 31 S.Ct. 27, 54 L.Ed. 1131 (1910).

■ In the instant case, the Debtor and Barnhill entered into operating agreements and division orders relating to Barnhill's interest in the wells. None of these documents specifically create an express trust. Whether an express trust can be implied from these documents, or by the actions of the parties, is a question of fact that need not be reached as Barnhill is unable to trace the funds paid him to any specific funds held in trust for his benefit.

In *In re Mahan & Rowsey*, the court held that funds which a non-operator owner of an oil well paid to the operator were subject to application of a constructive trust. *Mahan* at 684. That court, however, further held that the lowest intermediate balance rule applied when tracing trust

funds in a commingled account. *Id.* This holding is consistent with case law which has articulated that a party who wishes to exempt trust property from a bankruptcy estate must not only prove the existence of the trust relationship, but that party must also specifically identify the trust property in either its original or its substituted form. *See, Elliott v. Bumb,* 356 F.2d 749 (9th Cir.1966); *In re Lemons & Associates, Inc.,* 67 B.R. 198 (Bankr.D.Nev.1986).

The debtors did nothing to suspend or segregate those funds received on behalf of others. The runs were deposited into a general disbursement account. There is no evidence to suggest that the funds in the account upon which Barnhill's check was drawn were funds which were derived from oil and gas runs attributable to Barnhill, in whole or in part.

Barnhill cites *In re MCZ Inc.,* 82 B.R. 40 (Bankr.S.D.Tex., 1987), for the proposition that a debtor holds bare legal title to identifiable run proceeds under a bailment or agency theory. With that, this Court cannot disagree. In *In re MCZ,* however, the debtor deposited run proceeds into a specific bank account. Those run proceeds were present in that account on the date of the debtor's Bankruptcy filing. There was no allegation of commingling of run proceeds with other funds. The *MCZ* court held that the Debtor held bare legal title to the run proceeds under either a bailment or agency theory.

In the instant case, run proceeds were not segregated into a specific account. Further, it is undisputed that the account from which Barnhill was paid reached a zero balance on or about October 2, 1985, making it impossible to trace the funds paid to Barnhill to run proceeds. Under the holding of *MCZ,* had the payment to Barnhill been made directly from an account into which run proceeds were directly deposited and which was not used as a general disbursement account, there would be no question as to the fact that the payment was of funds held for Barnhill's benefit. That, however, is not the case. The payment was made from an operating account and there is no indication on the check that the payment to Barnhill was a payment of identifiable run proceeds.

Barnhill asserts that it is unnecessary to trace the funds and cites *Begier v. Internal Revenue Service,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) as being dispositive as to all issues before the Court. In the *Begier* case, the United States Supreme Court examined whether or not "trust fund taxes" paid out of a debtor's general account prior to bankruptcy were recoverable as preferences. Prior to filing bankruptcy, the debtor, AIA Commercial Airlines, had had numerous employees from whom it was required by federal statute to withhold employment taxes. AIA was also required to collect certain excise taxes from customers that were payable to the IRS. Under the terms of 26 U.S.C. § 7501, the amount of both the employment taxes and the excise taxes collected or withheld by AIA were "held to be a special fund in trust for the United States." *Begier* at 60, 110 S.Ct. at 2263.

In 1984, AIA fell behind in making the necessary remittances to the government, and in February 1984, it was ordered to pay all taxes collected into a special segregated account. Notwithstanding that order, AIA failed to segregate the trust fund monies or deposit them in the special account. Up until the time AIA filed for bankruptcy, however, it made timely and voluntary payments to the IRS and remained current on its tax obligations. The necessary payments were made both from the special segregated account and from the debtor's general bank account.

In July 1984, the AIA filed bankruptcy, and a Chapter 11 trustee was appointed. The Chapter 11 trustee sued to recover the payments made to the IRS during the 90 days preceding the bankruptcy filing. In denying the requested relief, the Supreme Court determined that the funds paid to the IRS did not represent property of the estate as the funds were funds held in trust for the IRS. Notwithstanding the fact that some payments were made from the debtor's general account, rather than the segregated account, the Court, relying on interpretation of provisions of the Internal Revenue Code, held that a voluntary pre-petition payment of "trust fund taxes" to the IRS was not a transfer of the debtor's

interest in property. *Begier* at 60–61, 110 S.Ct. at 2263–64. The Court further held that funds have "been properly held for payment if the debtor is able to make the payments" and the debtor's voluntary payment of its trust fund obligations was sufficient to establish the required nexus between the "amount held in trust" and the funds paid. *Begier* at 66–67, 110 S.Ct. at 2266–67.

The *Begier* case is clearly distinguishable from the case at bar. *Begier* deals with a unique type of situation, a trust created for the benefit of the Internal Revenue Service. The *Begier* court acknowledged that common law trust principles were not applicable to such cases, and that "a § 7501 trust is radically different from the common-law paradigm." *Begier* at 62, 110 S.Ct. at 2265.

Second, the Court in *Begier*, unlike the case at bar, was dealing with issues pertaining to an express, statutorily created trust. As discussed above, while, in this case, a fiduciary, trustee-type relationship was created between Barnhill and the Debtor, there was no express trust created by the documents executed by Barnhill and the Debtor. Barnhill has not alleged, and I have been unable to find any case law to support the existence of any statutorily created trust.

Third, in *Begier*, the payments that the trustee was seeking to recover had been timely and voluntarily made by the debtor. The Court found, relying on legislative history, that as the trust fund payments were timely and voluntarily made, it was reasonable to assume that the debtor had properly held the funds for payments to the IRS. The debtor's actions in voluntarily paying its trust fund taxes were found to be sufficient to establish the required nexus between the amount held in trust and the funds paid. In contrast, in the instant case, the payments were not timely and voluntarily made. The Debtor reached a settlement with Barnhill only after Barnhill filed suit in State District Court. Under this circumstance, no persuasive argument can be made that the untimely payment, made only after suit was filed, can provide a sufficient nexus between any trust funds and the payment made to Barnhill.

## CONCLUSION

The operating agreement and distribution orders entered into between the Debtor and Barnhill created a trustee type relationship which imposed on the Debtor a duty of fair dealing. The same documents did not create an express trust between the Debtor and Barnhill. The Court does not reach the question of whether the relationship between the Debtor and Barnhill impliedly creates an express trust or whether a constructive trust must be imposed, as under any trust theory Barnhill must trace the funds used for the payment to him from funds held in trust for his benefit. Applying the lowest intermediate balance rule, Barnhill is unable to trace those funds as both the Debtor's operating account and disbursement account reached zero balances prior to the issuance of the Check to Barnhill.

This Court therefore grants summary judgment to the Plaintiff in the amount of $157,148.22 plus interest from ten days after the United States Supreme Court decision in *Johnson v. Barnhill*. This memorandum opinion constitutes the Court's findings of fact and conclusions of law. F.Bankr.R. 7052.