**In re Robert A. HILDEBRAND,**
**SS # 522–44–0063, Debtor.**

**Bankruptcy No. 94–10209–SBB.**

United States Bankruptcy Court,
D. Colorado.

Jan. 24, 1997.

M. Kathleen Turano, Wheat Ridge, CO, for Claimant GSL Group, Inc.

William A. Richey, Weinman, Cohen & Niebrugge, P.C., Denver, CO, for the Chapter 7 Trustee, Harvey Sender.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion of GSL Group, Inc. for Payment of Administrative Expense filed August 15, 1996, the Response thereto filed by the Chapter 7 Trustee on August 28, 1996, the Amended Response thereto filed by the Chapter 7 Trustee on September 4, 1996, the Brief of GSL Group, Inc. in Support thereof filed October 28, 1996, and the Brief of Chapter 7 Trustee ... in Support of Objection filed November 13, 1996. The Court, having reviewed the file, conducted a law and motion hearing on the issues on October 10, 1996, at which time the parties were requested to file the above-referenced briefs. The Court, being advised in the premises, makes the following findings of fact and conclusions of law and enters the following order.

### Issues Presented

■ This Court is first asked to determine whether it has jurisdiction to decide a contract dispute involving a contract which was entered into post-petition as part of the administration of the case and which was expressly subject to the approval of the Bankruptcy Court. For the reasons stated herein, this Court finds that it has core jurisdiction to determine the dispute. 28 U.S.C. §§ 157(b)(1), (2)(A), (B), (N), and (O). The United States Supreme Court case *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*) notwithstanding, an effort by a party which has contracted with a bankruptcy estate, brought as part of its effort to obtain payment from a liquidating estate, is a "core" proceeding that the bankruptcy court has the constitutional power to decide.

■ Finally, this Court must decide whether damages which may be assessed

against a bankruptcy trustee as a result of a breach of such post-petition contract are entitled to treatment as priority administrative expenses. This Court concludes that parties subjected to loss and expense as a result of the administration of a bankruptcy estate are entitled to be made whole and should be allowed an administrative claim.

### Findings of Fact

1. The Debtor filed a Voluntary Petition pursuant to Chapter 7 of the Bankruptcy Code on January 10, 1994. Harvey Sender was appointed as interim Chapter 7 Trustee ("Sender" or "Trustee").

2. On January 31, 1996, the Trustee, on behalf of the Estate, entered into a Commercial Contract to Buy and Sell Real Estate (the "Contract") with a buyer, GSL Group, Inc. ("GSL"),[1] for the sale of property located at 7345 E. Peakview Ave., Englewood, CO 81111.

3. In connection with the Contract, GSL made an earnest money deposit of $5,000. The balance of the $90,000 purchase price was to be paid at closing.

4. The Contract gave GSL the right to inspect the physical condition of the property. The Contract further provided as follows:

> Buyer or any designee, shall have the right to have inspection(s) of the physical condition of the Property and Inclusions, at Buyer's expense. If written notice of any unsatisfactory condition, signed by or on behalf of Buyer, is not received by Seller on or before February 20, 1996 (Objection Deadline), the physical condition of the Property and Inclusions shall be deemed to be satisfactory to Buyer. If such notice is received by Seller as set forth above, and if Buyer and Seller have not agreed, in writing, to a settlement thereof on or before February 24, 1996 (Resolution Deadline), this contract shall terminate three calendar days following the Resolution Deadline; unless within three calendar days, Seller receives written notice from Buyer waving objection to any unsatisfactory condition.

Contract, ¶ 10.

5. Pursuant to the Contract, Sender filed a Motion for Authority to Sell Property of the Estate on February 7, 1996. This Court granted the Motion on February 29, 1996.

6. On February 15, 1996, prior to the entry of the Order Authorizing Sale of Property of Estate, GSL notified Sender that it could not gain access to the property and, due to the complexity of the legal situation and the inability to gain access, GSL deemed the property to be unsatisfactory pursuant to the inspection clause of the Contract. GSL requested the return of the earnest money deposit.

7. In response, Sender notified GSL that its request for the return of the earnest money deposit was denied because GSL failed to identify defects in the physical condition of the property. Sender demanded from GSL that a written notice of the specific defect(s) be supplied by February 20, 1996.

8. On February 19, 1996, GSL again notified Sender that it could not gain access to the property in order to conduct a physical inspection. However, GSL specified the color of the carpet as being "unsatisfactory," inasmuch as the carpet was the only objectionable interior physical attribute that could be determined without gaining access to the property. GSL again requested return of its earnest money deposit.

9. On February 20, 1996, GSL's attorney notified Sender by letter that GSL had canceled the Contract and made demand for the return of the earnest money deposit. Contract, ¶ 18(b).[2] The letter identified two areas of default, failure to permit the physical inspection of the structural condition and mechanical systems of the property, and Sender's failure to provide the requisite title in-

---

1. GSL Group, Inc. is denominated "GSL Grouping" in both the Motion to Sell and the Contract.

2. Contract, paragraph 18(b), provides as follows: "IF SELLER IS IN DEFAULT: Buyer may elect to treat this contract as canceled, in which case all payments and things of value received hereunder shall be returned and Buyer may recover such damages as may be proper, or Buyer may elect to treat this contract as being in full force and effect and Buyer shall have the right to specific performance or damages, or both."

formation prior to the Contract deadline, February 15, 1996. Contract, ¶ 8.[3]

10. Sender has never denied or disputed the facts alleged by GSL to constitute a Contract default.

11. On March 1, 1996, GSL's attorney again demanded the return of the earnest money deposit and requested mediation of the dispute. Contract, ¶ 20.[4] A list of three proposed mediators was requested within seven days. No response was forthcoming from Sender.

12. GSL's attorney again requested the return of the earnest money deposit and the list of proposed mediators by letter dated March 15, 1996.

13. On March 29, 1996, Sender's counsel [5] notified GSL's attorney that they would be representing Sender in this matter. More expeditious responses were promised.

14. This Court subsequently approved the sale of the property to Secure Structured Settlements, Inc. for $85,000 on June 14, 1996.[6]

15. By way of the instant Motion, GSL maintains that the return of the $5,000 earnest money deposit is a priority administrative claim because the contract was entered into by Sender and approved by the Bankruptcy Court post-petition as part of the administration of the case. 11 U.S.C. § 503(b). Moreover, GSL requests interest and compensation for its attorneys' fees, pursuant to the Contract. Contract, ¶ 18(c).[7]

16. Sender maintains that the earnest money deposit was retained pursuant to the terms of the Contract for GSL's failure to comply itself with the terms of the Contract. Contract, ¶ 18(a)(2).[8] Moreover, Sender argues that the request is neither an actual necessary cost or expense of preserving the Estate nor has GSL rendered a benefit to the Estate which would allow for the payment of an administrative expense.

17. Finally, Sender argues that the claim arose out of a pure contract dispute which must be litigated in state court, or, at least, must be the subject of an adversary proceeding.

18. The $5,000 in earnest money deposit funds are currently held in escrow by Sender, pursuant to the Contract.

## Discussion

### Jurisdiction

■ The courts in this District have utilized a "restrictive" analysis of the term "core proceeding," construing the term narrowly in order to fit within the constitutional

---

3. Contract, paragraph 8, provides, in part, as follows: "Seller shall furnish to Buyer, at Seller's expense, either a current commitment for owner's title insurance policy in an amount equal to the purchase price or at Seller's choice, an abstract of title certified to a current date, on or before February 15, 1996 (Title Deadline)."

4. Contract, paragraph 20, provides, in part, as follows: "If a dispute arises relating to this contract, and is not resolved, the parties and broker(s) involved in such dispute (Disputants) shall first proceed in good faith to submit the matter to mediation. The Disputants will jointly appoint an acceptable mediator and will share equally in the cost of such mediation."

5. Weinman, Cohen & Niebrugge, P.C. was authorized to represent Sender by Order entered March 3, 1995 to "generally assist the Trustee in the administration of the case." *See*, Motion to Employ Weinman, Cohen & Niebrugge, P.C. as Attorney for Trustee filed February 21, 1995.

6. The Secure Structured Settlements, Inc. sale included an earnest money deposit in the amount of $1,000 and a seller-carry back note in the amount of $84,000, which was to be immediately sold at a discount to Ted Johnson Realty, Inc. for $66,500.

7. Contract, paragraph 18(c), provides as follows: "**COSTS AND EXPENSES.** Anything to the contrary herein notwithstanding, in the event of any arbitration or litigation arising out of this contract, the arbitrator or court shall award to the prevailing party all reasonable costs and expenses, including attorney fees."

8. Contract, paragraph 18(a)(2), provides as follows: "**IF BUYER IS IN DEFAULT:** ... **Liquidated Damages.** All payments and things of value received hereunder shall be forfeited by Buyer and retained on behalf of Seller and both parties shall thereafter be released from all obligations hereunder. It is agreed that such payments and things of value are LIQUIDATED DAMAGES and (except as provided in subsection (c)) are SELLER'S SOLE AND ONLY REMEDY for Buyer's failure to perform the obligations of this contract. Seller expressly waives the remedies of specific performance and additional damages."

purview of *Marathon*.[9] *In re Pierce,* 44 B.R. 601 (D.Colo.1984); *In re Standard Metals Corp.,* 97 B.R. 593, 595 (Bankr.D.Colo.1988); *In re P & P Oilfield Equipment, Inc.,* 71 B.R. 621 (Bankr.D.Colo.1987); *In re Illinois–California Express, Inc.,* 50 B.R. 232 (Bankr. D.Colo.1985).

Notwithstanding this restrictive analysis, this Court finds that the instant situation fits within the definition of "core proceeding." A claim asserted against the bankruptcy estate arising out of a post-petition contract between the claimant and the bankruptcy trustee that was subject to approval of the bankruptcy court—and for which the creditor has filed, in the Bankruptcy Court, an application for payment of an administrative expense pursuant to 11 U.S.C. § 503—falls within the parameters of "allowance or disallowance of claims against the estate,"[10] and "orders approving the sale of property [of the estate],"[11] as well as the two so-called catch-all provisions, "matters concerning the administration of the estate"[12] and "other proceedings affecting the liquidation of the assets of the estate."[13]

GSL is pursuing a claim for administrative expense, therefore, the claims allowance process has been invoked and is it being implemented. 28 U.S.C. § 157(b)(2)(B). This Court's prior Order approving the sale of the property to GSL has been implicated as well. 28 U.S.C. § 157(b)(2)(N). The subject Contract was entered into post-petition by Sender, in his capacity as a Chapter 7 bankruptcy trustee, and was approved by this Court according to statutory requirements in an effort to liquidate the assets of the Estate. Consequently, the dispute concerns the essential administration of the Estate. 28 U.S.C. § 157(b)(2)(A). Finally, in general, the dispute affects the liquidation of the assets of this Estate and is, therefore, integral to the successful conclusion of its timely administration. 28 U.S.C. § 157(b)(2)(O).

Contrary to Sender's assertions, the fact that the claim raises issues of state, rather than federal, law does not by itself determine that it is not a core proceeding. Congress specifically provided that the "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). "It is the nature of the proceeding—its relation to the basic function of the bankruptcy court—not the state or federal basis for the claim, that makes the difference here." *In re Arnold Print Works, Inc.,* 815 F.2d 165, 169 (1st Cir.1987).

"[P]ostpetition state law claims asserted by or against a trustee in bankruptcy or the trustee's agents for conduct arising

---

**9.** *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*), the case in which the Supreme Court held unconstitutional a key jurisdictional provision of the Bankruptcy Act of 1978. The specific issue in that case was whether the bankruptcy court possessed the constitutional power to adjudicate a bankrupt's state law contract claim that arose before the filing of the bankruptcy petition. A plurality of four justices reasoned that bankruptcy courts are not Article III courts, and while Congress might grant to non-Article III courts the power to find facts in cases involving certain private rights, namely congressionally created private rights, the specific right contested in *Marathon* was neither a "public right" nor a "constitutionally created right," so Congress could not delegate the power to adjudicate that right to a non-Article III court, such as the bankruptcy court. Two justices agreed with the plurality's result, but on the narrower ground that the issues in the suit arose "entirely under state law," and that no case had "gone so far" as to permit a non-Article III court to adjudicate such a claim.

The Supreme Court has since adopted a view of *Marathon* that resembles that of the concurring justices. *Marathon* has been characterized as a case in which it "was unable to agree on the precise scope and nature of Article III's limitations" and that the holding "establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985). *See, also, Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 3251, 92 L.Ed.2d 675 (1986); *In re Arnold Print Works, Inc.,* 815 F.2d 165, 166 (1st Cir.1987).

**10.** 28 U.S.C. § 157(b)(2)(B).

**11.** 28 U.S.C. § 157(b)(2)(N).

**12.** 28 U.S.C. § 157(b)(2)(A).

**13.** 28 U.S.C. § 157(b)(2)(O).

out of the sale of property belonging to the bankruptcy estate qualify as core proceedings." *In re Harris Pine Mills,* 44 F.3d 1431, 1437 (9th Cir.), *cert. den'd sub nom., Maitland v. Mitchell,* —— U.S. ——, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995) (footnote omitted) (cases cited). Even where the specific causes of action asserted against a bankruptcy trustee exist independently of bankruptcy law, "an action against a bankruptcy trustee for the trustee's administration of the bankruptcy estate could not[, therefore, a]ll claims against [a trustee] related to his conduct during the ... bankruptcy, ... should be considered core proceedings." *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 483 n. 4 (6th Cir.1992), *cert. den'd,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 *rehr'g den'd,* 507 U.S. 1002, 113 S.Ct. 1628, 123 L.Ed.2d 186 (1993). *See, also, Arnold Print Works, supra* at 168.

Sender attempts to distinguish and dismiss certain cases relied upon by GSL. This Court is not at all persuaded.[14] *In re Standard Metals Corporation,* 97 B.R. 593 (Bankr.D.Colo.1988) and *In re Telemarketing Communications,* 95 B.R. 794 (Bankr. D.Colo.1989) both involved cases that were, at least initially, Chapter 11 cases, and ensuing litigation which was pivotal to the success of the contemplated reorganization plan. Nevertheless, Bankruptcy Judge Roland J. Brumbaugh in *Telemarketing Communications* viewed the ultimate absence of a confirmed Chapter 11 plan to be a "distinction without a difference." *Telemarketing Communications, supra* at 795. Bankruptcy Judge Patricia Ann Clark in *Standard Metals* observed that a post-petition contract with a bankruptcy trustee "cannot be called a traditional state contract action" and specifically adopted the holding and rationale of *Arnold Print Works.* Judge Clark further observed that

> the time when the contract was entered into and the relation of that contract to the judicial administration of the bankruptcy

estate forms the crux of the critical constitutional difference between *Marathon* and its progeny. More importantly, the court focussed on the apparent risk of procedural unfairness to require a party involved in a state law cause of action to appear in a bankruptcy court. The [*Arnold Print Works* ] Court noted that from a policy standpoint any party who contracts or assumes a postpetition contract with a bankrupt company must know that they are dealing with an entity that is responsible to the bankruptcy court and accordingly the resolution of subsequent disputes in a bankruptcy court should not come as any surprise to that contracting entity.

*Standard Metals, supra* at 596.

The rights and obligations between Sender and GSL were created, reviewed and approved by a combination of the Bankruptcy Code and this Court and were not undertaken in the ordinary course, as a contract outside of the realm of bankruptcy would be. To a certain extent, this Court would be abdicating judicial responsibility for ensuring that its orders are observed, were it to refuse to resolve the instant dispute.

This Court agrees with the *Harris Pine Mills* case that GSL's post-petition state law claims asserted against Sender for conduct "inextricably intertwined with the trustee's sale of property belonging to the bankruptcy estate involved a core proceeding subject to federal jurisdiction." *Harris Pine Mills, supra* at 1438.

Having determined that this Court has core jurisdiction to determine the dispute, the merits thereof must now be examined.

**Administrative Expense Priority**

 As a preliminary matter, Sender maintains that the earnest money at issue constitutes property of the estate and, therefore an adversary proceeding is necessary to adjudicate whether or not turn over is appropriate. Rule 7001(1), Fed.R.Bankr.P. This Court disagrees with the underlying asser-

---

**14.** This Court is directed to *In re Gardner,* 913 F.2d 1515 (10th Cir.1990) on several occasions. This Court finds *Gardner* to not be on point, inasmuch as *Gardner* dealt with a dispute involving property that was determined to be no longer

property of the bankruptcy estate. Such is not the case *sub judice.* Similarly, *In re Rarick,* 132 B.R. 47 (D.Colo.1991) dealt with a cause of action which existed pre-petition and involved issues independent from the bankruptcy itself.

tion that the earnest money is property of the estate. By definition, property held by a debtor in trust is not part of the bankruptcy estate. *See*, 11 U.S.C. § 541(d). *See, generally, In re First Capital Mortgage Loan Corp.*, 917 F.2d 424, 426 (10th Cir.1990) (cases cited); *In re Butcher*, 46 B.R. 109 (Bankr.N.D.Ga.1985).[15] There can be little doubt that the escrow arrangement created a trust relationship.[16] Merely because the trustee or debtor enters into an escrow arrangement after the commencement of the case (11 U.S.C. § 541(a)(7)) does not convert those escrowed funds into estate property. The escrowed funds were, and are, not property of the estate; no adversary proceeding is, necessarily or specifically, required to recover them.[17]

▮ In a similar vein, Sender argues that all case law on this issue involved cases where an initial determination had been made *in another forum* that the claimants were entitled to a judgment, damages, or an award of attorney's fees. The claimants *then* sought treatment of their claims as administrative expenses. Here, Sender argues, there has been no proper prior adjudication establishing the existence of a breach of the Contract. This Court finds that a formal prior adjudication in another forum is *not* an absolute prerequisite to any determination by this Court. This Court is capable of making a factual determination, such as whether a breach of the Contract has been committed, and by whom.[18] *See, e.g., In re Pacesetter Designs, Inc.*, 114 B.R. 731 (Bankr.D.Colo.1990) (where this Court, on application for an administrative cost arising from post-petition conduct, determined that an injured employee was entitled to a limited, specific administrative claim for direct, necessary medical expenses and certain wages, where the debtor/employer had failed to maintain the required workers' compensation insurance).

Indeed, bankruptcy court claims adjudications routinely and necessarily involve resolution of factual disputes. It is an inevitable and essential part of case administration. *See, e.g., In re Branded Products, Inc.*, 154 B.R. 936, 947 (Bankr.W.D.Tex.1993) ("bankruptcy courts routinely apply and construe state law in claims litigation, lien fights, and the like").

▮ It does not appear to be genuinely contested that Sender has breached the Contract. He does not deny and has not disputed that (a) GSL was prevented from timely entering into the property to perform the required physical inspection, (b) that the necessary title commitment or abstract was not submitted in a timely manner, (c) that GSL timely provided, on at least two occasions, notice of its inability to inspect the premises

---

**15.** *Butcher* involved a post-petition contract for the sale of real property entered into between the trustee and a third party. The purchaser deposited $100,000 earnest money with a title company. The sale was approved by the bankruptcy court. For unspecified reasons, the closing did not take place as scheduled and both the trustee and the purchaser filed suits to recover the earnest money. Although the issues in *Butcher* involved jurisdiction and venue, the court and the parties agreed that the real property and the contract were property of the estate. No allegation was made that the earnest money constituted estate property as well.

**16.** Contract, paragraph 3(a), provides as follows: "Earnest Money. $5,000 in the form of Business Check, as earnest money deposit and part payment of the purchase price, payable to and held by Harvey Sender, trustee, broker, in its trust account on behalf of both Seller and Buyer. Broker is authorized to deliver the earnest money deposit to the closing agent, if any, at or before closing."

**17.** The cases cited by Sender do not persuade this Court otherwise. *In re Stacy*, 99 B.R. 142 (D.Mass.1989) involved a request for specific performance, equitable relief. *In re Rene Press, Inc.*, 29 B.R. 446 (1st Cir. BAP 1983) dealt with the recovery of post-petition payments to an accountant. In *In re McRae*, 181 B.R. 866 (Bankr. S.D.Tex.1994) the liquidating trustee was attempting to prove that the debtor was liable for the payment of taxes related to the sale of certain property post-petition. Finally, *In re National Sugar Refining Co.*, 23 B.R. 726 (Bankr.S.D.N.Y. 1982) involved a suit by the trustee and a third-party lender against a third-party for damages.

**18.** This Court finds Trustee's counsel's suggestion that GSL must commence a civil action in state court and, to use his words, "go through the whole nine yards" to be particularly illustrative of the inefficient and wasteful notions that permeate some of the Trustee's argument and which persist in often making bankruptcy case administration more costly than necessary.

and intent to cancel the Contract, and (d) that GSL sought, but was essentially ignored in its efforts, to have the dispute mediated under the Contract.[19]

■ Turning to the merits of the dispute, GSL argues that damages assessed under contracts such as this one, entered into post-petition by a Chapter 7 trustee and approved by a bankruptcy court, are entitled to treatment as claims for payment of administrative expenses under 11 U.S.C. § 503(b)(1)(A). The damages, it is argued, are akin to other costs incidental to the disposition of estate assets and should be afforded the same priority. Sender disputes this contention.

■ The burden of proving entitlement to a priority is on the person claiming such priority. *See, e.g., In re Amarex, Inc.*, 853 F.2d 1526, 1530 (10th Cir.1988). Certainly, statutory priorities are to be narrowly construed to foster the presumption that a debtor's limited resources will be equally distributed among his creditors. Consequently,

[A]n expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession and 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.' A debt is not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate.

*Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976)) (citations omitted) (emphasis added).

The United States Supreme Court, in the case of *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), considered the question of administrative expenses,

and while not directly on point, the reasoning is helpful in resolving the issues before this Court. *Reading* involved property destroyed by fire due to the negligence of a receiver appointed in the Chapter XI arrangement to conduct the debtor's business. The party whose property was destroyed subsequently filed an administrative expense claim for the loss, to which there was objection. In approving the claim and overruling the objection, the Supreme Court determined that the actual and necessary costs "should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible." *Reading, supra* at 483, 88 S.Ct. at 1765. In subsequently analyzing the *Reading* case, one court summarized its application as follows:

[T]hus, the Court allowed the administrative claim, reasoning that parties subjected to loss and expense as a result of the administration of a bankruptcy estate are entitled to be made whole as a matter of fundamental fairness and should be allowed an administrative claim to implement that result.

*In re G.I.C. Government Securities, Inc.*, 121 B.R. 647, 649 (Bankr.M.D.Fla.1990).

Rather than requiring an actual benefit to the estate, the language of Section 503(b)(1)(A) only requires that the conduct involved in attempting to preserve the estate must be "actual, necessary" and in an effort to "preserv[e] the estate."[20] Therefore,

[q]ualification of a claim for administrative priority does not require that a post-petition claimant demonstrate a tangible benefit to the estate, but rather, a showing that as a result of the trustee's actions on behalf of the estate, the claim was incurred and became an element of the 'actual, nec-

---

19. *See,* Motion of GSL Group, Inc. for Payment of Administrative Expense, ¶¶ 3, 5, 6, 7, and 8; [Trustee's] Amended Response to Motion of GSL Group, Inc. for Payment of Administrative Expense, ¶ 3 (referencing a "contract dispute .. over the return of earnest money which the Trustee has retained under the terms of a contract entered into between the Trustee and GSL **for failure of GSL as purchaser under the con-**

**tract to comply with the terms of the contract."** No specifics of GSL's purported failure to comply are stated).

20. *Compare, In re Lister*, 846 F.2d 55 (10th Cir. 1988) (dealing with § 503(b)(3)(D)—"substantial contribution").

essary costs and expenses of preserving the estate.'

\* \* \* \* \* \*

An analysis based solely upon monetary benefit does not readily resolve other claims against the estate which are included in the larger realm implied by [§ 503]. This broader area may be considered to encompass the cost of complying with a standard of behavior which the estate must adhere as an entity which functions in the commercial world. As such, the estate cannot escape its liabilities by transmuting transactional costs and charges of functioning as an entity, post-petition, into unsecured claims of low or non-priority nature against the estate.

\* \* \* \* \* \*

Thus, where there is not only a lack of benefit but actual loss, the estate may nevertheless be held liable for an effort with a negative result. Where a chapter 11 business operates at a loss, those who serve it—payroll, suppliers, and administrative officers, including counsel—nevertheless are entitled to and commonly receive priority payment. It is not unusual that payment for these ultimately unproductive charges will result in exhaustion of the estate's remaining assets before anything is paid to those in the same or a lower order of priority—particularly general creditors.

*In re Madden,* 185 B.R. 815, 818–819 (9th Cir. BAP 1995).

As is sometimes the case,

[e]fforts to preserve the estate are not always successful, but the contingency of loss should not be borne by the trustee's adversary where the trustee is necessarily bound by statute or contract to compensate the party for costs of defense.

\* \* \* \* \* \*

To allow the debtor in possession to avoid liability for attorneys' fees by relegating them to the prepetition creditor pool can result in injustice to those who become engaged, voluntarily or involuntarily, in transactions with the bankruptcy estate, suffering loss or damage thereby. The inequity of such loss is heightened where the claimant may be held subordinate to payment of first priority administrative claims, which, in this case, will likely include the debtor's counsel.

*Madden, supra* at 819.

On the policy level, it is patently obvious that relegation of a claim, such as the one before this Court, to general creditor claim status would greatly chill, or eliminate, the willingness of third parties to deal with bankruptcy estates in the future. Such a result would encourage lower prices for asset sale transactions, such as this, and may cause significant economic harm to numerous different parties, and certainly, most of all, to the unsecured creditors. This Court cannot condone a result so contrary to an obvious purpose of the Bankruptcy Code, *i.e.,* maximizing return to creditors.

Even if the result of this particular case results in a diminution of funds otherwise available to general creditors, this Court finds that harm, to be outweighed by the critical need to honor legitimate priority claims and avoid discouraging business transactions with bankruptcy estates, in general. *See, generally, In re E.A. Nord Company, Inc.,* 78 B.R. 289, 292 (Bankr.W.D.Wash. 1987). For these reasons, this Court finds that GSL is entitled, under the Contract, to the return of the earnest money and, as a result of this litigation, an award of "all reasonable costs and expenses, including attorney fees."

### Conclusion

For the above-stated reasons, it is

ORDERED that the Motion of GSL Group, Inc. for Payment of Administrative Expense filed August 15, 1996 is GRANTED; GSL is entitled to a return of the $5,000 earnest money deposit forthwith. And it is

FURTHER ORDERED that GSL may file a legally-sufficient application for reasonable and necessary attorney fees incurred herein, and for such other fees and costs as it may believe it to be entitled under the Contract, **on or before February 14, 1997.** Trustee Sender may file a response thereto **within 15 days thereafter,** whereupon the

issue shall stand submitted for determination.[21]

---

**21.** This Court is, preliminarily, of the view that Sender and/or his counsel, and not the Estate or its creditors, are responsible and should be liable for any attorney's fees awarded. As this Court intimated, preliminarily, at the hearing on this matter, Sender's position did not appear to be well-founded or based on sound, applicable law. Indeed, this Court opined that, under the circumstances and based on its understanding of the applicable law (reiterated in this opinion), Sender's position could constitute "over-lawyering". **The issue of which party, the Estate or the Trustee and his counsel, should be held responsible for payment of any attorney's fees awarded should also be addressed in GSL's application and Sender's response, if any, thereto.**