**In re DIAMONDS PLUS, INC.**

**Bankruptcy No. 98–30906M.**

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

May 12, 1999.

Warren Dupwe, Jonesboro, AR, for debtor.

Charles Coleman, Little Rock, AR, for Silverman's Jewelers Consultants, Inc.

## ORDER

JAMES G. MIXON, Chief Judge.

On June 29, 1998, Diamonds Plus, Inc. ("Debtor") filed a voluntary, petition for relief under the provisions of chapter 11 of the United States Bankruptcy Code. To date no plan of reorganization has been confirmed.

On August 3, 1998, the Debtor filed a motion for authority to sell all of its inven-

tory free and clear of liens and approve a management and sales agreement with Silverman Jewelers Consultants, Inc. ("Silverman"). Attached to the motion was a proposed written contract between the Debtor and Silverman, which was unsigned by either party.

Paragraph 26 of the proposed contract contained the following provision:

> In the event that a third party unrelated to SJC [Silverman] objects to the Sales and such objection is allowed or if a third party makes an offer to perform services substantially as agreed to herein by SJC and the Sales is [sic] not allowed or such third party offer is a higher and better offer and is accepted by Owner and/or the Bankruptcy Court, then, in consideration of the time and expense incurred by SJC in negotiating the Agreement, providing management and consulting services for Owner, Owner shall pay SJC a breakup fee of $10,-000.00 plus actual expenses (including attorney's fees) incurred by SJC in connection with this Agreement.

On August 28, 1998, the Debtor filed an amended motion for authority to sell inventory free and clear of liens and for approval of a management and sales agreement to consider all proposals, including that of Silverman. A hearing was conducted on the amended motion on September 15, 1998, at Batesville, Arkansas. At the hearing, MK Diamonds, Inc., on behalf of Bobby Wilkerson, Inc. ("Wilkerson"), entered a competing bid. Thereafter, the Court solicited bids from all parties and at the conclusion approved the final Wilkerson bid.

On September 25, 1998, Silverman filed a Request for Payment of Administrative Expense based on the provision of the unexecuted contract with the Debtor for $10,000.00 as a break-up fee, plus attor-ney's fees and costs in a total sum of $17,919.55. Silverman argued in its brief that the break-up fee, expenses, and attorney's fees should be allowed pursuant to 11 U.S.C. § 503(b)(1)(A) or alternatively pursuant to 11 U.S.C. § 503(b)(3)(D) because Silverman made a substantial contribution to the estate.

The Debtor argues that the claim should not be allowed because the agreement providing for these payments was never executed by the Debtor or Silverman nor was it approved by the Court.

## DISCUSSION

 A break-up fee is a fee, agreed to by the parties, to be paid to a potential purchaser of a business or business assets if the transaction falls to be consummated for various reasons established in a purchase agreement. *In re APP Plus, Inc.*, 223 B.R. 870, 874 (Bankr.E.D.N.Y.1998). A break-up fee is intended to compensate the unsuccessful bidder for fees and expenses in connection with the effort to complete the transaction. The fee pays the bidder for his time, the risk that the offer will be used as a stalking horse to induce other bids, and the loss of other business and investment opportunities "while the bidding process unfolds." *In re APP Plus, Inc.*, 223 B.R. at 874.

 However, in this case no binding agreement to pay a break-up fee exists, nor do the parties ask that an agreement to pay a break-up fee be approved. Rather, Silverman seeks to impose the obligation on the Debtor based on an unexecuted management and sales agreement. Research has revealed no case law authority that will support Silverman's claim in the absence of a pre-existing agreement between the parties to pay the break-up fee.[1] See, *In re Pub. Serv. Co. of N.H.*,

---

1. In reported bankruptcy cases dealing with break-up fees, the fees have previously been agreed upon by the Debtor or Trustee and the prospective buyer and the agreement has been memorialized in a binding contract. The issue is typically whether the court will approve such fees. See, e.g., *In re Am. Shipyard Corp.*, 229 B.R. 551 (Bankr.D.R.I.1998) (court allowed break-up fee where debtor and proposed buyer had a binding agreement); *In*

160 B.R. 404, 455 (Bankr.D.N.H.1993) (stating that the right to a break-up fee must be established by court order before the auction; court and all parties must be put on notice that break-up fees will be forthcoming) (citing *In re Integrated Resources, Inc.,* 135 B.R. 746 (Bankr. S.D.N.Y.1992), *aff'd,* 147 B.R. 650 (S.D.N.Y.1992), *appeal dismissed,* 3 F.3d 49 (2d Cir.1993)).

■ Silverman argues alternatively that it be allowed an administrative claim for the break-up fee, attorney's fees and costs pursuant to 11 U.S.C. § 503(b). This section provides in relevant part as follows:

 (b) After notice and a hearing, there shall be allowed administrative expenses . . . including—

 . . .

 (3) the actual, necessary expenses, other than compensation and reimbursement specified under paragraph 4 of this subsection, incurred by—

 . . .

 (D) a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title;

 . . .

 (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

11 U.S.C. § 503(b)(3)(D) & (4) (1994).

■ To receive fees and expenses under this section, Silverman must show a substantial, tangible contribution to the estate. *In re S.N.A. Nut Co.,* 186 B.R. 98, 105 (Bankr.N.D.Ill.1995); 4 Collier on Bankruptcy, § 503.10[5] (Lawrence P. King et al. eds., 15th ed. rev.1999).

Here the facts are that Silverman did make a substantial contribution to the chapter 11 case. Silverman met with the Debtor on numerous occasions and helped

re *Angelika Films 57th, Inc.,* 227 B.R. 29 (Bankr.S.D.N.Y.1998) (court found break-up fee agreed to by debtor and proposed buyer was unwarranted); *In re APP Plus, Inc.,* 223 B.R. 870 (Bankr.E.D.N.Y.1998) (court approved break-up fee agreed to by the first offerer and trustee of chapter 11 estate); *In re Tiara Motorcoach Corp.,* 212 B.R. 133 (Bankr. N.D.Ind.1997) (court denied break-up fees agreed to by debtor and prospective buyer since, among other reasons, the agreement was found in a non-binding letter of intent); *In re Bidermann Indus. U.S.A., Inc.,* 203 B.R. 547 (Bankr.S.D.N.Y.1997) (court would not allow break-up fees agreed to by the debtor and the buyer in a letter agreement); *In re S.N.A. Nut Co.,* 186 B.R. 98 (Bankr.N.D.Ill. 1995) (no break-up fee allowed when debtor and prospective buyer previously agreed to fee only in the event that the prospective buyer was outbid); *In re Am. West Airlines, Inc.,* 166 B.R. 908 (Bankr.D.Ariz.1994) (court denied break-up fee previously agreed to by the debtor and a prospective buyer); *In re Pub. Serv. Co. of N.H.,* 160 B.R. 404 (Bankr. D.N.H.1993) (court disallowed break-up fees agreed to by debtor and prospective buyer but

not previously approved by a specific court order); *In re Twenver, Inc.,* 149 B.R. 954 (Bankr.D.Colo.1992) (court withheld approval of previously agreed to break-up fee); *In re Hupp Indus.,* 140 B.R. 191 (Bankr.N.D.Ohio 1992) (court denied break-up fees previously agreed to by the debtor and the prospective buyer); *In re Integrated Resources, Inc.,* 135 B.R. 746 (Bankr.S.D.N.Y.1992) (court approved motion for order allowing debtor to agree to break-up fees), *aff'd,* 147 B.R. 650 (S.D.N.Y.1992), *appeal dismissed,* 3 F.3d 49 (2nd Cir.1993); *In re Federated Dep't Stores, Inc.,* 135 B.R. 950 (Bankr.S.D.Ohio 1992) (pre-existing contractual agreement for break-up fee in merger document between debtor and proposed buyer was legitimate business expense); *In re Crowthers McCall Pattern, Inc.,* 114 B.R. 877 (Bankr.S.D.N.Y.1990) (debtor and prospective buyer agreed to break-up fee that was subsequently approved by the court), *aff'd,* 171 B.R. 603 (S.D.Ohio 1994); *In re 995 Fifth Ave. Associates,* 96 B.R. 24 (Bankr.S.D.N.Y.1989) (debtor and prospective buyer agreed to break up fee that was later objected to by creditors).

coordinate a going-out-of-business sale. Silverman, motivated by justifiable self-interest, was to conduct the sale for a stated consideration to the Debtor. Wilkerson learned of Silverman's proposal and entered the competition with a higher bid. After several bids and counterbids made in open Court, Wilkerson was allowed to purchase the Debtor's inventory at $0.91 on the cost dollar, while Silverman's original bid was for $0.80 on the cost dollar.

An officer of the Debtor estimated the value of the inventory to be "nine hundred fifty thousand, something like that." (Tr. at 14.) The difference between Silverman's initial bid and Wilkerson's final bid would have resulted in a benefit to the Debtor in the range of $104,00.00 to $120,-000.00 which is a substantial amount. Furthermore, the Debtor does not deny that it received a substantial benefit.

In a factually similar case, the court stated that "the phrase 'substantial contribution' in section 503 means a contribution that is 'considerable in amount, value, or worth.'" *Hall Fin. Group, Inc. v. DP Partners, Ltd. Partnership (In re DP Partners, Ltd. Partnership)*, 106 F.3d 667 (5th Cir.1997) (quoting Webster's Third New International Dictionary 2280 (4th ed.1996)). The policy supporting section 503 is "to promote meaningful creditor participation in the reorganization process." *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249 (5th Cir.1986) (quoting *In re Gen. Oil Distributors*, 51 B.R. 794, 805 (Bankr.E.D.N.Y.1985); *In re Calumet Realty Co.*, 34 B.R. 922, 926 (Bankr. E.D.Pa.1983), *aff'd in part, remanded in part*, 785 F.2d 1249 (5th Cir.1986)).

Although Silverman is not entitled to a break-up fee, it will be allowed out-of-pocket expenses of $3,167.47 and attorney's fees and expenses of $4,752.08 as an administrative expense. The $10,000.00 balance of the claim will be disallowed.

IT IS SO ORDERED.