**In re TAMA BEEF PACKING INC., Debtor.**

**Bankruptcy No. 01–03822.**

United States Bankruptcy Court, N.D. Iowa.

June 16, 2004.

John M. Titler, Cedar Rapids, IA, for Debtor.

Jeffrey P. Taylor, Cedar Rapids, IA, Theodore R. Stone, Cedar Falls, IA, for trustee.

## ORDER RE APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSES

PAUL J. KILBURG, Chief Judge.

The above-captioned matter came on for hearing on April 19, 2004 on remand from the Eighth Circuit Bankruptcy Appellate Panel. AgriProcessors, Inc. appeared by Attorney Jeffrey Courter. The U.S. Trustee appeared by Attorney John Schmillen. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B).

## STATEMENT OF THE CASE

AgriProcessors, Inc. ("AgriProcessors") appealed this Court's denial of its application for payment of break-up expenses and costs as administrative expenses under 11 U.S.C. § 503(b)(1)(A). AgriProcessors' claim is based upon an agreement with Chapter 7 Trustee Renee Hanharan ("Trustee") to assume the non-residential real property lease of Debtor Tama Beef Packing, Inc. ("Debtor") with the City of Tama. The Bankruptcy Appellate Panel for the Eighth Circuit reversed on appeal, concluding that the break-up expenses and costs benefitted the bankruptcy estate and are allowable as an administrative expense claim. The case was remanded to determine the reasonableness of AgriProcessors' break-up expenses and costs.

## FACTUAL BACKGROUND

Prior to filing bankruptcy, Debtor negotiated a non-residential real property lease for a meat-packing plant ("the Lease") with the City of Tama, Iowa ("the City"). Debtor filed for Chapter 11 relief on November 8, 2001. On the petition date, Debtor had missed three monthly lease payments of $30,000 each.

The case was converted to Chapter 7 on December 18, 2001. The Lease was the only asset of value in Debtor's estate. On February 15, 2002, Trustee filed a motion to extend the time to decide whether to assume or reject the Lease. Attached to Trustee's motion was a Letter of Intent ("the Letter") from AgriProcessors to purchase the Lease. The Letter stated that if another buyer purchased the Lease with a higher offer, AgriProcessors would be entitled to up to $50,000 in expenses and costs.

On March 12, 2002, prior to the time set for hearing on Trustee's February 15, 2002 motion to extend time to assume or reject the Lease, Trustee filed a motion to assume and assign the Lease to AgriProcessors. Attached was an Assignment and Assumption Agreement between Debtor and AgriProcessors ("the Agreement"). Section 9 of the Agreement states:

> **9. Effect of Termination.** Notwithstanding any provision otherwise contained in this Agreement, the Bankruptcy Estate agrees that if the Agreement is terminated pursuant to Section 8(d) above, then AgriProcessors shall be entitled to submit an administrative claim to the Bankruptcy Court in an amount not to exceed $50,000 to allow AgriProcessors to recover a portion of its costs and expenses associated with this transaction.

At the March 12, 2002 hearing on Trustee's February 15, 2002 motion to extend time to assume or reject the Lease, the Court refused to extend the time unless

AgriProcessors posted an initial payment of $100,000. This amount was refundable to AgriProcessors only if Trustee accepted a higher offer from another purchaser. The break-up expenses and costs provision was not discussed at the hearing. AgriProcessors made the $100,000 payment.

Throughout this period, Iowa Quality Beef Supply Network L.L.C. ("Iowa Beef") was engaged in negotiations with the City for the Lease but refused to deal directly with Trustee. By April 3, 2002, Iowa Beef made an offer to Trustee of $110,000 for assignment of the Lease. On April 18, 2002, Trustee's motion to assume the Lease and assign it to Iowa Beef was granted. Iowa Beef purchased the Lease for $153,000. AgriProcessors' final offer was $130,000.

On June 3, 2002, AgriProcessors filed an application for administrative expenses of $46,964.99. This amount is divided into four categories consisting of the following amounts:

| | |
|---|---|
| Legal Fees and Expenses | $36,726.59 |
| Environmental Engineering Fees and Expenses | $ 7,077.40 |
| Accounting Fees | $ 2,325.00 |
| Travel Costs (Regular Rate) | $ 800.00 |
| **TOTAL** | **$46,964.99** |

The Bankruptcy Appellate Panel found that the break-up expenses and costs provision was approved by this Court's March 15, 2002 Order referencing the March 12, 2002 hearing. *In re Tama Beef Packing, Inc.*, 290 B.R. 90, 95 (8th Cir. BAP 2003). The case was remanded for a determina-

tion of the reasonableness of the fees requested.

## BREAK–UP FEES

■ Break-up fees are not recognized in all circuits. They are a creature of judicial interpretation and are not found in the Code or Rules. Other than in the present case, the propriety of break-up fees has not been addressed in this Circuit. Where recognized, the allowance of break-up fees and break-up expenses under 11 U.S.C. § 503(b)(1)(A) is analyzed "in reference to general administrative expense jurisprudence." *In re Tama Beef Packing, Inc.*, 290 B.R. 90, 97–98 (8th Cir. BAP 2003). Nine factors are considered to determine whether AgriProcessors' fees and expenses benefitted the bankruptcy estate. *Id.* (citing *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 536 (3d Cir.1999)). Only the third factor, "whether the amount of the fee is unreasonable relative to the proposed purchase price," remains at issue on remand. *Tama Beef*, 290 B.R. at 97–98 (citing *O'Brien*, 181 F.3d at 536).

## AVERAGE RANGE OF REASONABLENESS

In the context of bankruptcy law, the average range of reasonableness for break-up fees and expenses is 1–4% of the purchase price, although a few courts have found higher percentages to be reasonable.[1] *In re Hupp Indus., Inc.*, 140 B.R.

---

1. Break-up fees and break-up expenses in the bankruptcy context were first considered in the 1980s. A representative survey of the cases follows, in order of lowest to highest percentage break-up fee or expenses approved:

*In re 995 Fifth Ave. Assocs.*, 96 B.R. 24 (Bankr.S.D.N.Y.1989) (0.68% break-up fee of $500,000 for a $73,725,000 purchase price is reasonable); *In re Kidron, Inc.*, 278 B.R. 626 (Bankr.M.D.Fla.2002) (0.91% break-up fee of $100,000 for an $11 million purchase price is

reasonable); *In re Integrated Res., Inc.*, 147 B.R. 650, 652 (S.D.N.Y.1992) (1.06% break-up fee of $6 million-constituting 3.2% of actual expenses—for a $565 million purchase price is reasonable); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877 (Bankr.S.D.N.Y. 1990) (1.11% break-up fee of $500,000 for a $45 million purchase price is reasonable); *In re Genicom*, Case No. 00–1383(PJW) (Bankr. D.Del.2000) (1.2% break-up fee is reasonable); *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr.N.D.Ill.1995) (1.22% break-up fee of

191, 194 (Bankr.N.D.Ohio 1992) ("Except in extremely large transactions, break-up fees ranging from one to two percent of the purchase price have been authorized."); *In re Twenver, Inc.*, 149 B.R. 954, 957 (Bankr.D.Colo.1992) ("[T]he Court finds that the 10% [break-up fee] ... sought here greatly exceeds the 1% to 2% fees found to be reasonable in the majority of cases approving such fees."); *In re Integrated Res., Inc.*, 147 B.R. 650, 662 (Bankr. S.D.N.Y.1992) (break-up fee consisting of 1.6% of purchase price is reasonable considering industry standard of 3.3%).

AgriProcessors argues that the case law involves large transactions, while the break-up expenses and purchase price in this case are relatively small. According to AgriProcessors, a higher percentage should be allowed for smaller transactions.

While it is true that the majority of cases addressing break-up fees and expenses in bankruptcy cases involve large transactions, a few courts have addressed break-up fees and expenses in the context of more modest transactions. Contrary to AgriProcessors' position, the range of reasonableness in those cases is consistent with the range found in cases with large purchase prices. *See In re Lamb*, No. 96–1–1099–DK, 2002 WL 31508913 (Bankr. D.Md. Oct.11, 2002) (approving 1.48% break-up fee of $9,902.20 for a $670,000 purchase); *Twenver*, 149 B.R. at 957 (denying a 11.11% break-up fee of $50,000 for a $450,000 as unreasonable).

AgriProcessors submitted a detailed application for fees and expenses in the amount of $46,964.99 arising from its pursuit of the Lease assignment. AgriProcessors asserts that these expenditures are fair, reasonable, and necessary as part of its due diligence and lease negotiations. AgriProcessors' travel costs were billed at the regular hourly rate as opposed to the one-half rate that is customary in this district. *See, e.g., In re Jeanes*, No. 01–00760–W, slip op. at 2 (Bankr.N.D.Iowa

---

$350,000 for a $28.8 million purchase price is reasonable); *In re APP Plus, Inc.*, 223 B.R. 870 (Bankr.E.D.N.Y.1998) (1.25% break-up fee of $250,000 for a $20 million purchase price is reasonable); *In re Lamb*, No. 96–1–1099–DK, 2002 WL 31508913 (Bankr.D.Md. Oct.11, 2002) (1.48% break-up fee of $9,902.20 for a $670,000 purchase price is reasonable); *In re CellNet Data Systems, Inc.*, Case No. 00–844(PJW) (Bankr.D.Del.2000) (2.2% break-up fee is reasonable); *In re PennCorp Financial Group, Inc.*, Case No. 00–888(PJW) (Bankr.D.Del.2000) (2.3% break-up fee is reasonable); *In re CXM, Inc.*, 307 B.R. 94 (Bankr.N.D.Ill.2004) (2.59% break-up fee of $200,000 for a $7,726,056 purchase price is reasonable); *In re ARM Financial Group, Inc.*, Case No. 99–4430(PJW) (Bankr.D.Del. 2000) (3% break-up fee is reasonable); *In re Hupp Indus., Inc.*, 140 B.R. 191, 193–94 (Bankr.N.D.Ohio 1992) (3.16% break-up fee of $150,000 for a $4.75 million purchase price is reasonable); *Gey Associates General Partnership v. 310 Assocs., L.P.*, No. 02 Civ. 0710 (SHS), 2002 WL 31426344 (S.D.N.Y. Oct.29, 2002) (3.23% break-up fee of $100,000 for a $3.1 million purchase price is

reasonable); *In re FSC Corp.*, Case No. 00–B–04659 (Bankr.N.D.Ill.2000) (3.4% break-up fee is reasonable); *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 536 (3d Cir.1999) (break-up fee of approximately 4% is reasonable in relation to the purchase price); *In re Paging Network, Inc.*, Case No. 00–3098(GMS) (7.24% break-up fee is reasonable); *In re Philip Servs. Corp.*, Case No. 03–37718 (Bankr. S.D. Tex. June 2003) (14.29% break-up fee of $5 million for a $35 million purchase price is reasonable).

Cases in which a break-up fee was rejected as unreasonable in relation to the purchase price follow, in order from lowest to highest requested percentages:

*In re Bidermann Indus. USA, Inc.*, 203 B.R. 547 (Bankr.S.D.N.Y.1997) (4.4–6% break-up fee of $4–5.8 million for a $93 million purchase price is unreasonable); *In re Twenver, Inc.*, 149 B.R. 954, 957 (Bankr.D.Colo.1992) (11.11% break-up fee of $50,000 for a $450,000 purchase price is unreasonable); *In re Diamonds Plus, Inc.*, 233 B.R. 829 (Bankr. E.D.Ark.1999) (denied a break-up fee, but allowed $7,919.55 out of $17,919.55 in requested expenses for an $864,500 purchase price).

Dec. 20, 2001). Apart from this, the Court does not question AgriProcessors' submission of requested expenses. A reduction in travel costs reduces the total amount to $45,014.99.

AgriProcessors' final bid for purchase of the Lease was $130,000. The purchase price by Iowa Beef was $153,000. Agri-Processors' expenses and fees constitute 30.7% of the final purchase price, and 36.1% of AgriProcessors' final bid. This is high relative to the purchase price of the Lease. *See Tama Beef,* 290 B.R. at 98 (noting that $46,964.99 "is large relative to the total purchase price of $153,000").

■ AgriProcessors argues that if these break-up expenses and costs are not allowed in their entirety, the possible chilling effect on third party dealings with bankruptcy estates outweighs any harm in this case. *In re Hildebrand,* 205 B.R. 278, 287 (Bankr.D.Colo.1997). Break-up expenses and costs are allowable, but only to the extent that they are reasonable in relation to the purchase price. *Tama Beef,* 290 B.R. at 97–98. Courts have established a range of reasonableness which enables third parties to include break-up fee and break-up expenses provisions within those guidelines. In this case, the requested amount is well outside that range.

## PURCHASE PRICE

The break-up fees allowed are based on the previously discussed percentages as applied to the purchase price. In it's post-hearing brief, AgriProcesors largely abandons its earlier challenge to the percentages set out in this opinion. Instead, for the first time, it presents a new and novel argument. Instead of challenging the percentage of the pie it should receive, it now seeks to supersize the pie. In other words, it challenges the accepted definition of "purchase price". It argues that the percentage fee should be based not on the total purchase price of the lease alone, but on the purchase price *and* the amount owed to the City of Tama to cure the $937,749.70 default. It contends that this position finds support in dicta found in the B.A.P. Ruling, which states:

> That sum is large relative to the total purchase price of $153,000, but because the bankruptcy court found no benefit to the estate, it made no determination as to whether the fees were reasonable in the context of the *fees and due diligence necessary to accept the assignment of a lease with a default in the neighborhood of one million dollars.* We find that we have no evidence before us to decide if the amount of the break-up fee is reasonable or if the application properly accounted for the reasonable expenses incurred.

*Tama Beef,* 290 B.R. at 98(emphasis added).

AgriProcessors concedes that computing the break-up fees in such a manner is unprecedented. (AgriProcessors' Supplemental Brief at pg. 2). A careful reading of the B.A.P.'s ruling convinces this Court that AgriProcessors' interpretation of this language is misplaced on numerous grounds.

First, the total purchase price is the accepted standard upon which the reasonableness of fees is determined. Every case which this Court has found uses the actual price paid in determining the purchase price. No Court in any circuit adds actual expenses or additional liabilities assumed as part of the purchase price.

Second, the 8th Circuit B.A.P. opinion is consistent with the foregoing opinions. The B.A.P. defines the total purchase price as $153,000. *Tama Beef,* 290 B.R. at 98. If the B.A.P. intended otherwise, it clearly would have defined purchase price differently. The B.A.P. subsequently restates

the same holding, in a different way, when it states that the benefit conferred to the estate by AgriProcessors was $153,000. *Id.* at 99.

Third, contrary to AgriProcessors' brief, the B.A.P. *does not* state that the amount of the default cure should be included in the purchase price. Rather it states that in determining whether $46,964.99 is a reasonable fee where the asset sold for $153,000 (nearly 31% of the purchase price), the Court should *take into account* the due diligence necessarily expended in contemplation of assuming a lease with a default cure in the neighborhood of one million dollars. Taking the liabilities into account defines the nature of the analysis but does not mandate or even suggest its inclusion in the purchase price.

Fourth, in taking into account the additional liability assumed with the lease, this Court concludes that the estate did not receive any direct benefit from the $937,749.70 default cure since the payment was owed to the City of Tama, and was not available for distribution to Debtor's creditors. The estate was insolvent at all times during the pendency of the bankruptcy, and general unsecured claimants received no distribution. Therefore, if the trustee had rejected the lease and the City had filed a claim for the pre-petition accelerated rent, it would have received no distribution as a general unsecured claimant. The accelerated rent was not collectible from Debtor, so no benefit accrued to Debtor by virtue of Iowa Beef's assumption of liability for the default. AgriProcessors asserts, and this Court does not dispute, that without a promise to cure the default, assumption and assignment of the lease under § 365 would not have been possible. Cure of the default was a condition precedent to the assignment (i.e., "sale") of the asset, but the benefit conferred upon the estate is incidental.

Ultimately, this Court concludes that, AgriProcessors' arguments to the contrary, the purchase price here was $153,000 and the appropriate range of compensation of one to four percent must be applied to that amount.

### LAW OF THE CASE

AgriProcessors contends that this Court is bound by the law of the case on the issues decided by the 8th Circuit B.A.P. *Bethea v. Levi Strauss & Co.,* 916 F.2d 453, 456 (8th Cir.1990); *Pearson v. Norris,* 94 F.3d 406, 409 (8th Cir.1996); *Thornton v. Carter,* 109 F.2d 316, 320 (8th Cir.1940). This is a correct statement of existing law. AgriProcessors further asserts that the mandate from the B.A.P. was to include the default cure amount along with the $153,000 purchase price.

This issue has already been discussed at considerable length. Suffice it to state that it is the opinion of this Court that its discretion in this case is confined by law of the case to a determination as to whether the requested break-up fee is reasonable. The specific mandate of the 8th Circuit B.A.P. was "to make a determination as to the reasonableness of the fees." *Tama Beef,* 290 B.R. at 100. The mandate does not reiterate the language referring to the default cure used earlier in the B.A.P.'s discussion of the third prong of the *O'Brien* test, which is dicta. *Id.* at 98. Therefore, the Court is not mandated to apply the analysis suggested by AgriProcessors.

### CONCLUSIONS

The purpose of break-up fees and expenses is "to compensate the unsuccessful bidder for fees and expenses in connection with the effort to complete the transaction." *In re Diamonds Plus, Inc.,* 233 B.R. 829, 831 (Bankr.E.D.Ark.1999). The break-up fee and break-up expenses

reimburse the bidder for "his time, the risk that the offer will be used as a stalking horse to induce other bids, and the loss of other business and investment opportunities." *Id.* It is not, however, a guarantee that all the bidder's expenses will be reimbursed. *See, e.g., Integrated Resources,* 147 B.R. at 662 (break-up fee constituting 3.2% of unsuccessful bidder's expenses is reasonable). While the stalking horse plays an important role in the bidding process, the afforded protection must be reasonable.

To some extent, Agriprocessors was a stalking horse in this case. However, AgriProcessors claims more credit for its role than it may deserve. It claims that:

> As a result of AgriProcessors' involvement, however, Iowa Quality Beef was forced to enter into a bidding war for the lease assignment which ultimately generated $153,000 of funds available for distribution to pay creditors. In fact, after *all* of Debtor's priority claims are paid in full, including *all* priority wage claims totaling $72,554.03 which otherwise would have received nothing, the Trustee will be holding surplus funds of $53,453.73. To not allow AgriProcessors' Claim to be paid from the surplus funds, which otherwise would have little or no impact on the general unsecured claims, would send a clear signal to future third parties to not bother doing business with bankruptcy estates in smaller cases in the Northern District of Iowa.

AgriProcessors' Brief at p. 7.

AgriProcessors' analysis invokes several comments. This is a case consisting of unsecured claims of almost $6.5 million. Unsecured creditors will receive no distribution. There are also four secured creditors who will receive only a minuscule distribution. While it is true that all priority wage claims will be paid, it is arguable that these would have been paid in some manner, either in or outside the bankruptcy, in any event. At various hearings, both the City of Tama, as well as Iowa Quality Beef, expressed a desire to pay the wage claims to keep the work force intact. When considered in terms of the entire case and the entire indebtedness, AgriProcessors' contribution to this estate was not significant.

AgriProcessors' brief uses the term "surplus funds" to describe the residual funds left for distribution after payment of the wage claims and other administrative expenses. It argues that these funds should be paid to AgriProcessors since the funds would have little impact on creditors. It is, however, inaccurate to describe this money as surplus. It is available for distribution to legitimate claims. It is also inaccurate to assert it would have no impact on unsecured creditors. GECC is the largest unsecured creditor with a claim of $3,533,775.45. Trustee is holding $46,964.99. That amount is approximately 0.72% of total unsecured claims. A distribution of that percentage to GECC on its unsecured claim totals $25,443.18. The next largest unsecured creditor, Amplicon, Inc., would get $2,135.07. Contrary to AgriProcessors' position, these are payments of some significance.

It is the ultimate conclusion of this Court that AgriProcessors' contribution to this estate was not extraordinary. AgriProcessors' claim for fees is excessive. To put its request in perspective, AgriProcessors seeks more as an administrative expense than the proposed total distribution to the Trustee, to the attorney for the Trustee, to secured creditors, and to unsecured creditors combined. It seeks complete indemnification for its involvement in this case. It seeks to eliminate all of its risk. That is not the function of this type of administrative expense claim.

Viewed in light of the policies underlying § 503, Debtor's estate should not be made to bear the burden of fees incurred by a losing bidder where those fees are unreasonable in relation to the actual benefit brought to the estate by the expenditure of those fees. At more than 30% of the purchase price, the $46,964.49 in fees requested by AgriProcessors is unreasonable in relation to the $153,000 benefit those fees brought to the estate.

This Court finds that AgriProcessors is entitled to compensation which falls within the normal range of such awards. The record establishes no special circumstance which justify an award above that figure. This Court concludes that AgriProcessors is entitled to the industry standard of 3.2% of the purchase price of $153,000 as break-up fees and expenses.

**WHEREFORE,** AgriProcessors' application for administrative expenses is GRANTED IN PART and DENIED IN PART.

**FURTHER,** AgriProcessors is entitled to reasonable break-up expenses and costs in the amount of $4,896.00.